Case 17-2250, Matthew Beckman v. Wal-Mart Stores Inc. Argument not to exceed 15 minutes per side. Mr. Piper, you may proceed for the appellant when ready. May it please the court, William Piper appearing on behalf of the plaintiff appellant, Matthew Beckman. I'll reserve two minutes for rebuttal. You know you're having a bad day as a plaintiff's attorney when you lose a summary judgment motion for reasons not raised by the defendant in their briefs. The defendant, it happens unfortunately, but in this case the defendant was arguing that Mr. Beckman in October of 2014 did not meet the hours of service requirement required for FMLA. This is regarding his FMLA claim. I argued in my reply that the hours of service requirement based on controlling case law should have been applied at the beginning of the new term of intermittent leave which he requested in July of 2014 when he did have the requisite hours of service requirement over 1,250 hours. Now the court in its opinion stated, well, plaintiff hadn't proven that the condition that he requested the intermittent leave for in July of 2014 was the same condition that he requested in October of 2014, but the defendant never raised that issue as a contested grounds for summary judgment, which it's required to do under Rule 56. So I could not possibly have anticipated that issue as something I should have addressed. Had it been briefed and addressed to me, I could have submitted an affidavit from my previous training physician. I think there's also an equitable estoppel argument there too because Sedgwick granted the intermittent leave. He then didn't have the opportunity at that time to present a present medical note from his physician saying that it was the same hernia condition. I guess I'm not sure why this is material to the decision here because in early October 2014, a supervisor tells your client that he's been absent without leave for a total of 110 hours and that if he gets, I think, even one more hour, he's going to be in violation of Walmart's attendance policy. Absent without leave. I mean, you know, without getting permission. And then I think it's on October 21st, he leaves work early without telling anybody. Doesn't get permissions. Not authorized at all. And he seems to have been fired for that reason. So if he could have restarted his period for FMLA leave, I'm struggling to see how that helps his failure to get permission to leave work, I guess, on the 21st and 22nd. Okay. Well, that's not my understanding of why he was fired, Your Honor. Would you agree that he violated Walmart's attendance policy for the amount of time he was absent without leave? I don't think that the record reflects that. I mean, what creates a genuine issue as to whether he violated the policy? Well, I don't think that he did violate the policy based on the record. Again, that was another issue not addressed by the defendants. I guess I'm more interested in just the substance at this point. I understand you have procedural concerns about how things happen in the district court. But . . . That would be another procedural issue that wasn't addressed. Looking at the record, it seems . . . and a big part of the reason we're here is for to show that this isn't true. But it seems that he did, in fact, exceed the maximum hours that one can be absent without permission from work. He tripped that wire on October 21st, just as a factual premise here. If there's evidence that shows that's not true, now's your chance to tell us. Well, first of all, had he been given leave before . . . Okay, but what I'm asking you is, do you have any record evidence? I'm hung up on a factual premise, and where that goes is another question. But do you have any record evidence that you can point us to that would create a genuine issue as to whether he, in fact, had violated Walmart's attendance policy by October 21st? Now's your chance. Off the top of my head, I can't address that, Your Honor. But that's not why he was terminated, and that's not why I'm here . . . the issues I'm here to address. He was terminated because, according to Sedgwick, he did not have the requisite number of hours to be eligible for family and medical leave. He had family and medical leave left that he could have used, and he . . . But he's not going to be able to use it after the 21st if he didn't ask for leave, and he just leaves work. I mean, you can have a condition under the FMLA that doesn't mean you can just walk off the job or not show up for work. You have to invoke that leave at the time. Yeah, I understand. I mean, but that's not why he was terminated. I mean, I feel like this is another issue I didn't get a chance to address. I thought he was terminated for, quote, excessive absences. Isn't that a fair shorthand of . . . He was terminated, from my understanding, because he didn't have the requisite number of hours that would have covered his absences when he requested them. Where would you point us in the record for that somewhat different understanding of why he was terminated? I don't have the record in front of me. Whatever it is, it's in my brief, but my understanding of why he was terminated was for that exact reason, because he didn't have the requisite number of hours for which he was requesting FMLA between the 23rd and the 30th. I thought this case involved the subsequent period. The FMLA argument in this case has to do with the period after October 21st. Yes, the 23rd through the 30th. 23rd through the 30th. I take Judge Kethley's question to be, how is whether he gets FMLA leave on the 22nd to the 30th have anything to do with whether he was properly terminated before that time? I've been with this case for a long time. I don't believe the record shows that he was terminated because of that anyone who terminated him cited the fact that he had exceeded the number of hours. They didn't terminate him for not coming in in the future, though, it had to be for something in the past. Yes, they terminated him on the 28th after he had been absent beginning on the 23rd for reasons for which he was absent. So his termination was based on this period of seven days or seven days, whatever? Yes, that's my understanding. Well, but I mean, the record said he was fired for excessive absences. I'm trying to find the piece of paper. And the record, as I understand it, yes, it's the 28th, but it's because of events that had happened by the 21st and 22nd. They didn't fire him on the spot and escort him out of the building. And I mean, really, it really is your obligation to point us to not just your understanding. That's not . . . we can't say the district court was wrong because plaintiff's counsel's understanding is X. We have to point to evidence in the record that creates a genuine issue for something. The court did not base its dismissal of this case on . . . It doesn't matter. We can affirm for any basis supported by the record. And so, at least in the points in the argument where we're focused on is there record support for an element of your claim, that's when you have to point to the record and not tell us the district court didn't do something. I can't address that specific issue. I didn't address it in my brief. That's not what I thought any of the issues were. I addressed the errors in the court's ruling. You know, ruling on things . . . Sometimes the district court is right for the wrong reason. I'm not saying this is one of those cases, but we're not going to reverse, typically, the district court if there's another reason that is . . . Yeah, I understand. What I can say is he should have received leave under the family medical leave for times that he did not. And that would cover the hours that you say got him over the top, so to speak. But he didn't get permission. I mean, that's the thing. You can be eligible, but you can't just not show up. You can't just leave work. That is an issue I didn't address. I didn't think that was an issue in the lower court. I didn't think it was an issue . . . Okay. I understand. And I think it would be covered by other time periods. So if you accumulate time, other leaves he had under the FMLA would have covered earlier time periods that would have had him under that. But the reason I understand that they dismissed him, and the reason he was told, is that he didn't have the hours of service requirement in October. This is your client's deposition. Question. Were you told that it had been terminated, his employment, because you had reached a step four in attendance? Answer correct. Step four in attendance is you have been absent without authorization more than the maximum permissible hours, right? Right. Your client admits that's why he was fired. That's what he was told. He was told. Okay. Okay. Well, that would be some evidence that that's the real reason. So then it's like, is there anything else that would tell us that actually that was just a fraud? Yeah. His claim was, is that he should have been granted FMLA and he wasn't because of the hours of service requirement, which is, I thought that's what I was addressing, the fact that the court ruled on other reasons that weren't addressed in . . . Well, I mean, there could be more than one problem with the claim, is, you know, one potential. I understand. I mean, but that was an issue I never addressed. I believe there was other . . . because it was never raised, there were other leaves he should have received that would have had him under that threshold level. Anyway, I do have, obviously, some ADA claims here where he requested extended leave. The court ruled that he only asked for extended leave under the FMLA, which isn't true. The defendant told him that you don't have FMLA, so after he was told that, if he's asking for extended leave, he's asking for, obviously, extended leave not under the FMLA. So if the ADA contemplates as an accommodation that you can get leave beyond the limitations of the FMLA, there was also an error in the application of the 100% rule back in, I think it was August of 2013. He was told that one of the reasons he wasn't getting light duty was because you have to be 100%. So I think that's also an error that's in the record regarding his ADA claim. He also ruled that he wasn't qualified to do the job, which is also contrary to the record because he was qualified. The only time he wasn't qualified was when he would have these flare-ups and he was not able to do the job, which is an issue related to the FMLA and his leaves. So I think that covers the issues under the ADA. Thank you for your help in following up on your arguments where the basis for his termination is set out by the employer. Yeah. Is this a state problem? I mean, we don't know? My understanding was he was terminated because he didn't have the hours of service requirement when he asked for the leave to cover his time off. This might... I'm sorry. I think that's what my understanding is. So I recited the deposition testimony, page 362 of the record, or 361, exit interview, termination reason, excessive absences and or tardies. Correct. And again, my response to that was the issue was he was told that and then he attempted to use FMLA to cover that period. Would you agree that you can't retroactively get authorization for days that you've already missed or days where you left early without telling me? I don't think that's true at all. Not true? Yeah. Let's assume, let me give you a hypothetical. Let's assume... Really quick because you're red. So 30 seconds. Let's assume that you begin an absence two days before you would have gone over the top on absences. But you actually have a condition that lasts for two weeks. That would qualify you for FMLA and you could be able to... Is there any genuine issue that that sort of thing happened on the 21st here and 22nd when he... Well, I think, again, the evidence indicates he went over the top sometime in that period that I'm claiming is covered, the 23rd through the 30th. And so he was asking... Well, he went over the top on the 21st. I mean, that just seems pretty clear-cut. But I'll tell you what, you can respond to that in rebuttal. You still have your two minutes and we'll hear from opposing counsel. May it please the court? My name is Susan Zeller and I represent the Appalachian Walmart Stores, Inc. The district court properly granted summary judgment on appellant's claims under the Family and Medical Leave Act and the Americans with Disabilities Act. Appellant claims that Walmart interfered with his rights under the Family and Medical Leave Act when it denied his request for intermittent FMLA leave in October of 2014. The court should affirm summary judgment on that claim for at least two reasons. The first reason has been discussed at length previously. Appellant wasn't an eligible employee. The record is clear. As your honors know, to be eligible for FMLA leave, an employee has to work at least 1,250 hours in the 12 months immediately preceding the commencement of the leave. The record's undisputed that at the time of the requested leave in October, that appellant had worked 1,217 hours and therefore didn't qualify for FMLA leave. That's disputed. My understanding is that's not what we've been talking about so far. Is your understanding that's what we've been talking about so far? What I think happens here is we're getting to what you were talking about. That's really where I think the inquiry ends. I understand the point of view, but the argument, and I want to hear your answer to that, but I don't want to be confused about what we've been talking about so far, which sort of assumed away that issue and said regardless of whether he was entitled to FMLA leave, he wasn't qualified because he was fired not for failing to get FMLA leave, but he was fired for accumulated absences as of the time. That would be your second issue? That would be my second issue. That's the second reason for the affirmation. Just so I'm clear, the second issue is what we've been talking about so far, not the first issue. We haven't talked about the first issue. Not that you can't. With the hours? I'm just trying to understand which argument you're talking about. Exactly. That's what I'm trying to understand. I apologize. I thought he briefly touched on it and then we went into ... I don't know. Anyways, I apologize, Your Honor, but we moved to the second issue. Isn't there a dispute when that 12-month measurement period should start as to the sufficient time in the 12 months? Mr. Piper is saying that it's a different 12 months than the 12 months you're saying and that creates a genuine issue. The record, I think, is very clear. As this Court knows, in an opinion that you issued in the Davis case, we talked about when an employee has to establish eligibility for intermittent FMLA leave in terms of the hours requirement. In that case, the Court stated that when an employee has a chronic health condition for which they qualify for intermittent FMLA leave that has been approved, that the leave will commence with the occurrence of the first absence for that condition for which the employee is receiving intermittent leave and then any other absences for that same condition within the 12-month FMLA leave period will be included as part of one leave. The issue that we have here is Appellant is claiming, well, we should look at the July time period as the time period in which we should determine my client's eligibility because the July time period, when he asked for leave in October, it was for the same reason. Well, there's two reasons that that argument fails. The first reason is there's no evidence in the record that this is for the same medical reason, that what he was requesting leave for to cover the time period of October 23rd through October 30th of 2014 was, in fact, for the same medical reason that he took leave from July 8th to July 10th of 2014. It's not a genuine issue then, right? No. There is nothing in the record at all to indicate why he was requesting leave from the 23rd to 30th. You would start the period later in October, October to October, is that what you're saying? No. So the first reason this is not part of the same intermittent leave is there's no evidence that it's the same medical reason, but even assume it is for the same medical reason. The other problem is it's not in the same 12-month period, so him pointing to July is not appropriate. The first time that the appellant ever was absent for intermittent FMLA leave relating to this condition to which he points to, a hernia, is September 17th of 2013. So under this court's decision in Davis, that's the first absence. The 12-month period from that point forward means that the 12-month FMLA period ends September 17th of 2014. Thus, even if he's requesting leave on October 23rd through the 30th of 2014 for the same, the exact same condition that he was requesting leave for in July, and I don't believe that the record bears that out, but even if you were, it doesn't matter because in Davis, the court was very clear that one qualification for eligibility cannot sustain you indefinitely. You're required to... So you're saying, if I understand your argument correctly, you're saying that we can't start the period in July of 13, which is what the plaintiffs want to do, right? Because there is no evidence in the record that the July absence was a result of the June FMLA leave, is that right? No, I'm saying that the July absence was for a discrete period of time, from July 8th through the 10th. It was when an appellant took a leave of absence starting June 2nd for hernia repair surgery, to have his hernia repaired. Prior to that time period, starting back in September, on September 17th of 2013, he was asked six times and had requested intermittent leave for a hernia. He had talked about getting surgery, but he kept postponing it. Why don't we start this... Why is there no evidence this should start in July? We're talking July 13 to July 14 is what they want. Because there's record evidence that the first absence that the appellant ever had for this condition... This condition being what exactly? Hernia. Okay. The first absence for his hernia was September 17th of 2013. So that's why I was saying... Therefore it has to... The 12-month clock starts September. Right. I understand that part. But I thought... I probably didn't say it very well, but I thought your argument is basically we don't know why he took leave or he was absent in July. We know why he was absent in July. We don't have any evidence. Was it because of the hernia? It was recovering from the hernia surgery. So why isn't that still the same condition? What am I missing? It's hernia, hernia, hernia. July is related to the same condition potentially as September. We have no evidence of what... He's produced no record evidence as to why he needed this leave on October 23rd through the 30th. There's nothing in the record that shows what the basis for that request was. There's no medical testimony. There's no medical evidence. He can count 1200-something hours from July to July, right? But he can't because he's claiming it's for a hernia. And the first absence for the hernia was in September. So he can count the July absence, but he can't count the actual... What am I getting wrong? Because we just said June was for hernia repair, whatever, too. It's all hernia. Starting in September of 2013. But we just said June was hernia too, right? I mean, what am I getting wrong? In 2014. Okay, I'm talking June... Again, the plaintiff wants to measure it from June 2013 to 14, correct? July. July 13 to 14, correct? No. Am I wrong? Am I getting the month... It's July 2014. Okay. All right. I've been confused all along. I'm sorry. Oh, no. I apologize if I didn't make that clear. That's all right. The dates... I mean, it's hard to keep straight. Anyway... Yeah. No, I apologize. I'm just... You don't have to apologize. I mean, there's an argument that deals with September. Until I got to that argument in your brief, having read the opinion below, I thought the two options were October or July, but you come up with the theory that it's really September. That's what I thought. So it's like three different theories, which I understand, and your argument made a certain amount of sense, although I'm not sure that's what the district court relied on. Well, I think what the court was saying is he has a burden of establishing an eligible employee. I would say, and it is a little bit complicated, because I think there's multiple grounds why the July date doesn't work, but when he requests leave in October, yes. One reason that I think that the appropriate time to calculate that time is it's a new period and you have to recalculate his eligibility is, I don't think there's any evidence in the record that shows... But the district court said it's a new period. It is a new... You don't even look to whether it's July or September. This is a new one, right? Yes. Your answer, I think the district court probably thought was July, but you're saying, no, to be accurate, it was September, right? That's correct. It's a new period for two reasons. One, I don't think there's any evidence in the record that would ever tie it to... It has to be a new period for you to win, right? It can't be tied to the July one? Yeah. No, not necessarily, to win maybe that argument of whether he's eligible or not, but I think that takes you to the second answer, which is... Why don't we talk about argument number two? Yes. I guess I would say that no, not necessarily. I don't need that to be the case to win because I think at the end of the day, while it's an interesting argument, I think at the end of the day, defendant wins because there's no evidence under Ragsdale that there was any harm or that this had any impact anyway. Why don't you... Is that argument, before you get into it, where does that argument that didn't cause any harm, where does that first arise? Did you make that argument to us or to the district court or never? To the district court as well. We've made the argument that essentially when I say there was no harm from it, it's because he was eligible for termination on the 21st. That's the question. I understood the no harm or whatever you want to call it argument is that on the 21st, he was subject to being terminated, and when he was terminated, it was because on the 21st, he was subject to being terminated. That's the nature of the argument, and if that's true, whether he's entitled to FMLA for the 22nd through however farther into the future is neither here nor there. Whether he's entitled to FMLA leave for October 23rd through the 30th, which is the date he requested for it, because by the 21st, he exceeds his absences anyways. The issue he's raising, as I understand it, is the 23rd through the 30th, does he get FMLA leave, and that depends on what we've been talking about, issue 1, blah, blah, blah. But the argument that it doesn't matter is that assuming hypothetically that he was, now that we look at it, entitled to it for that week, he still had the same basis for being fired, and therefore, he wasn't out. In order to come to that conclusion, first of all, I'm asking when was that raised, this other, it made no difference, it made no harm. Where was that raised? It was the district court relied on it or not? We raised it with the district court in our brief. The district court relied on it or not? District court, I don't believe, it talks about the fact that he wasn't eligible. But that's all based on whether you needed to lift heavy equipment, not he was ineligible because of absentee or not. Hours, I think is what they were referring to when they talked about eligibility. You're saying you argued it in your summary judgment brief? Yes, Your Honor, we did. You argued this, it doesn't matter where you start the 100, where you start that year period because regardless of where you start it, he's not eligible for 23 through 30th because he was fireable on the 21st. Yes, and there is also . . . It's not clear to you, or at least you haven't made it clear to us that the district court relied on it, but it doesn't make any difference as long as you raised it in the district court. Your Honor, we did. We can rely on it, as long as you raise it in your brief, and you raised it in your brief? Yes. To us? Yes, Your Honor. All right, so if we assume that it's properly raised, then my question is, is it supported by the record? Your opposing counsel says no. As I understand his argument, he says you were fired because sometime during the 23rd through the 30th, you ran out of time. You ran out. You had too many . . . not that you had too many absences on the 21st, but that sometime during the next week, you had too many absences because you weren't there during the next week. And if he's right about that, then the fact that you were arguably entitled to that is no longer harmless. All right? Are you with me? Are we on the same track as to what we're . . . Yes. So what is there in the record which demonstrates that he was fired based on his absences of up to the 21st, but not after the 21st? Where in the record is that? Okay. I would point, Your Honors, to the declaration of Cynthia Boffman. Do you have a page ID? Yes. 403 and 404. 43 and 44? 403 and 404 in the page. We can look at that, and we'll find what? Ms. Boffman testified that as of his Step 3 coaching, he had 110 hours. So going into the week of October 21st, appellant had already reached 110 hours. It takes 111 hours, and you're fired. What does Step 4 mean? Termination. And so when Mr. Beckman testifies that he was given . . . the reason he was given for his termination was that he reached Step 4 of the attendance policy. How do we know that they're talking about reaching Step 4 on the 21st rather than a week later? Same question. Ms. Boffman's declaration addresses when he reaches that threshold, and I think to put it in context, he worked a four-day, ten-hour schedule, and so that week, appellant was on the 22nd, 23rd, 24th. He left early on the 21st, which at that point, he incurred another seven-and-a-half hours of unauthorized absences. He hit Step 4 then. He was eligible for termination. And he didn't ask for the 21st, he just asked for the . . . oh, he asked for the 21st? No, he did not. He did not ask to include the 21st or the 22nd in his FMLA leave. His FMLA leave was for the 23rd through the 30th. Okay. So he left early on the . . . So you had expectations for his being fired on these two pages of the record, then, basically? Yes, and also, page 442, which is an exhibit to Ms. Boffman's declaration, where she attaches the time and attendance records showing that he left early on both the 21st and the 22nd, and that that would have then taken him to the appropriate level for termination. Thank you, Your Honors. If we look at those and we find it doesn't say exactly that, or we are puzzled by it, then you sort of have to go back to your other argument. If you don't find that he was eligible for termination regardless on the 21st or 22nd? Then we'd have to go back to argument number one, the way we're calling it today. Then I think that you would go back to the eligibility argument. Okay. Thank you. Yes, Your Honors. Thank you. Here for Mr. Piper. Two minutes. All I can say is, wow, I mean, I . . . the whole issue is, on October 28th, he was told he had exceeded the number of hours. Okay. Then Mr. Beckman asked, can I use FMLA to cover some of the hours? The case keeps moving on and moving on and moving on, and then we get this opinion from Sedgwick that as of October 28th, he didn't have the requisite number of hours, so he wasn't eligible for FMLA. Then, not until sometime in mid-November is he terminated. I would suggest that the reason for termination was because he ultimately didn't meet that eligibility requirement for maximum hours, which I say is obviously not true because it should have begun in July. Let me address another issue. Under the FMLA, the term of intermittent FMLA is presumably a year. He initially asked for it September, and then it went . . . the doctor said February was the end date, which it could have gone for a year, but the doctor said February was the end date. I think probably the employer realized that it actually goes for a year. In April, they asked for certification. After six months, they can ask to have it recertified in connection with an absence. That's under the regulations. It was denied then in April. This FMLA, intermittent FMLA, ended because he didn't recertify. In July, and I'm opposing the defendant's argument that it goes from September to September. In July, he asked for a new period of FMLA. That's when it should have began because it had expired because he didn't recertify in April. That's why the new period begins in July. Again, the district court did not rule that he was terminated because he exceeded on the 21st. I understand. Any base is supported by the record. I understand, but I think the record shows that he was terminated because his attempt to use FMLA wasn't deemed acceptable because he didn't have allegedly the applicable number of hours. I don't think that's at all why he was terminated. The district court didn't rule on that basis. I don't think it was an issue in the court. I'm sorry? It was raised by opposing counsel. I really don't think it was. The whole argument in the district court was he didn't have the maximum hours. We'll see what the briefs say. Okay. All right. Thank you. Thank you both for your arguments. The case will be submitted.